DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JESSICA BAPTISTE,	)<br>	)<br>	Plaintiff,	)<br>	v.	)<br>	)<br>LEE J. ROHN, INDIVIDUALLY AND	)<br>D/B/A LAW OFFICES OF LEE J. ROHN,	)<br>	)<br>	Defendant.	)<br>_____) | Civil Action No. 2013-0104 |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
**Emily Shoup, Esq.,**
St. Croix, U.S.V.I.
  *For Plaintiff*

**Gordon C. Rhea, Esq.,**
St. Thomas, U.S.V.I.
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on Defendant's "Motion *in Limine* to Exclude any Evidence of Loss of Wages, Loss of Earning Capacity, Past or Future Medical Expenses or Permanency of Injuries," filed on February 1, 2016 (Dkt. No. 53); Plaintiff's Opposition, filed on February 8, 2016 (Dkt. No. 54); and Defendant's Reply, filed on February 16, 2016 (Dkt. No. 60). For the reasons that follow, the Court will deny Defendant's Motion *in Limine* as to loss of wages; and deny as moot the Motion *in Limine* as to past and future medical expenses, loss of earning capacity, and permanency of injuries.[1]

---

[1] On March 21, 2016, the Court advised the parties in open court of its ruling on Defendant's Motion *in Limine* as to lost wages, future medical expenses, loss of earning capacity, and permanency of injuries, and informed the parties that the rationale for the Court's ruling would follow. Defendant's Motion *in Limine* as to past medical expenses was rendered moot on March 23, 2016 when Plaintiff represented that she would not offer any evidence of past medical expenses.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Jessica Baptiste ("Plaintiff") brings this action against Lee J. Rohn, individually and d/b/a Law Offices of Lee J. Rohn ("Defendant"), alleging legal malpractice and breach of contract. (*See* Dkt. No. 1). In the Complaint, Plaintiff alleges that Defendant negligently failed to file her personal injury lawsuit against HOVENSA within the applicable statute of limitations; that, as a result, her complaint against HOVENSA in the Superior Court of the Virgin Islands was dismissed; and that the dismissal was affirmed on appeal. (*Id.*). Plaintiff also alleges in the Complaint that Defendant "promised that she would pay . . . the value of the case against HOVENSA if the [dismissal] was not reversed," but has failed to do so. (*Id.*). Plaintiff seeks damages for Defendant's alleged malpractice and breach of contract, as well as attorney's fees and costs. (*Id.*).

In the instant Motion, Defendant seeks to preclude Plaintiff from introducing evidence relating to (1) future medical expenses, (2) loss of earning capacity, (3) permanency of injuries, (4) loss of wages, or (5) past medical expenses. In Plaintiff's Opposition, she states that she "does not intend to offer evidence regarding future medical expenses, loss of earning capacity or permanency of injuries." (Dkt. No. 54 at 1). In addition, during trial, Plaintiff represented that she would not offer evidence of past medical expenses. Thus, the remaining issue is whether Plaintiff may offer testimony regarding past lost wages. (*Id.*). The Court answers this question in the affirmative.

### B. Factual Background

Defendant argues that Plaintiff has failed to disclose "a computation of . . . damages . . . [and] the documents or other evidentiary material . . . on which [the] computation is based" in violation of Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. (Dkt. No. 60 at 2).

Specifically, Defendant asserts that Plaintiff has not "disclosed what hourly wage she contends she was earning or how many hours she contends she missed from work as a result of any alleged injuries." (*Id.*). In support, Defendant points to the portion of Plaintiff's Rule 26(a)(1) initial disclosures regarding computation of damages that simply states that "Plaintiff's economic loss will be calculated by an expert, as yet unretained." (Dkt. No. 53-1 at 2).

Defendant also argues that Plaintiff failed to provide relevant evidence regarding her lost wages in response to Defendant's interrogatories. In particular, Defendant notes that in response to an interrogatory requesting Plaintiff's employment history and compensation for the five years preceding the accident, Plaintiff listed that she was employed by Jacobs IMC but omitted her compensation. (*See* Dkt. No. 60 at 2). Likewise, in response to Defendant's interrogatory to "[i]temize in detail and set forth any and all economic damages you are claiming," Defendant notes that Plaintiff just states that she "suffered lost wages and lost earning capacity" but does not specify the amount of hours she missed or her hourly wage. (Dkt. No. 53 at 4).

Defendant concludes that exclusion of Plaintiff's evidence regarding lost wages is warranted because "[t]he parties are on the eve of trial and there is simply no cure for the prejudice Defendant will suffer if this Court were to permit Plaintiff to testify at trial as to lost wages having never provided Defendant with any prior testimonial or documentary evidence as to this category of damages." (Dkt. No. 60 at 4).

In her Opposition, Plaintiff contends that she "can testify regarding the hourly wage she was making at the time of her injury and the amount of time that she missed from work." (Dkt. No. 54 at 2). She states that her testimony on these issues "was thoroughly investigated at [her] deposition by defense counsel who attached copies of [her] W-2s as exhibits to [the] deposition." (*Id.*).

3

On March 17, 2016, the day following the Final Pretrial Conference, Defendant filed a "Notice to the Court Concerning Lost Wage Claim," in which she argues that—contrary to Plaintiff's contention at the Final Pretrial Conference—Plaintiff had not provided a calculation of damages for lost wages in her deposition testimony. (Dkt. No. 89 at 1). Defendant cites several statements in Plaintiff's deposition testimony and concludes that "[c]learly Defendant cannot calculate from [Plaintiff's] deposition what are her claims for past loss of income." (*Id.* at 2).

On that same day—four days before trial—Plaintiff responded in a supplemental filing with a calculation of damages for her lost wages claim. (Dkt. No. 92 at 1).[2] As reflected in a settlement demand from Defendant to HOVENSA in the underlying litigation, Plaintiff asserts that her wage was $13.00 per hour at the time of the accident. (*Id.*). Plaintiff argues that this $13.00 per hour rate is also supported by Plaintiff's 2000 W-2 that indicates Plaintiff earned $20,565.59 working for Jacobs IMC between April and December 2000. (*Id.* at 1-2). Plaintiff further asserts that, in her deposition, she testified that she missed a "few days" of work and "[a]ssuming an 8 hour work day and missing 3 days of work, Plaintiff's lost wages total: $312.00." (*Id.* at 1).

Defendant filed an objection to Plaintiff's supplemental filing arguing that: (1) Plaintiff's assertion that her hourly rate was $13.00 "has no factual support" and was made "in an inadmissible settlement demand;" (2) Plaintiff's attempt to extrapolate her hourly rate from her total gross pay in 2000 is "nonsensical" because there is no evidence as to how many hours Plaintiff worked in 2000; and (3) Plaintiff never stated that she missed "three days of work" but rather that she did not know how many days she missed from work. (Dkt. No. 97 at 1-2).

---

[2] This supplemental filing was required pursuant to this Court's Order entered on March 17, 2016 (Dkt. No. 90).

4

## II. DISCUSSION

### A. Applicable Legal Principles

Under Rule 26 of the Federal Rules of Civil Procedure, a litigant must disclose to the other parties "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(A)(iii). "A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order . . . ." FED. R. CIV. P. 26(a)(1)(C).

When a party fails to properly provide information as required by Rule 26, that evidence shall be excluded "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). To determine whether a discovery violation warrants excluding the associated evidence, courts in the Third Circuit consider the following factors, sometimes referred to as the *Pennypack* factors:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)). "The preclusion of witness testimony is an extreme sanction, and as such, courts should be wary of imposing such a sanction absent a showing of a willful or flagrant violation." *Borden v. Ingersoll-Rand Co.*, No. 01-CV-5455, 2003 WL 21488511, at *2 (E.D. Pa. Jan. 17, 2003) (citing *Meyers*, 559 F.2d at 905).

**B. Analysis**

The Court finds that Plaintiff violated Rule 26(a)(1)(A)(iii) by failing to timely disclose the computation of damages for lost wages and the evidence upon which such computation was based. Plaintiff never provided her hourly wage, the amount of time that she missed from work, or even an estimated amount of damages she suffered in lost wages until four days before trial.[3] More is required under Rule 26(a)(1)(A)(iii). *See Bullard v. Roadway Exp.*, 3 F. App'x 418, 420 (6th Cir. 2001) ("Additionally, Plaintiff's Statement of Economic Loss contains no information relating to hours worked or hourly pay, information essential to calculating lost wages. Astonishingly, Plaintiff's statement does not contain any reference to a dollar figure. Such disclosures cannot constitute a 'computation of damages' under the discovery rules . . . .") (quoting underlying district court order).

Despite Plaintiff's failure to comply with Rule 26(a)(1)(A)(iii), not every discovery violation warrants exclusion of the associated evidence. FED. R. CIV. P. 37(c)(1). To determine whether exclusion is warranted, the Court examines the circumstances in light of the *Pennypack* factors and concludes that exclusion of Plaintiff's evidence of lost wages is not warranted under Rule 37.

First, any prejudice or surprise that Defendant may claim is inconsequential. Notwithstanding that Plaintiff failed to disclose either the amount of lost wages she is seeking or her calculation for reaching such amount until four days before trial, Defendant has not articulated how the challenged evidence would cause her surprise or prejudice of any significance. Notably, the $13.00 per hour wage that Plaintiff disclosed on the eve of trial is the same hourly wage that appears in the settlement letter that Defendant sent to HOVENSA on Plaintiff's behalf in the

---

[3] Even in Plaintiff's responses to Defendant's interrogatories and Plaintiff's Opposition to the instant Motion, Plaintiff failed to disclose an estimate of the amount of damages or other information (such as her compensation) that is relevant to determining her claimed damages for lost wages. (*See* Dkt. No. 60 at 2-3).

underlying lawsuit in 2008. Having signed the letter and used it for settlement purposes in the underlying litigation, and having sought to exclude its use by Plaintiff in the instant litigation, (*see* Dkt. No. 51 at 2), Defendant undoubtedly knew of the letter's contents, including the $13.00 hourly wage. It is difficult to see, therefore, how Defendant is prejudiced or surprised by Plaintiff's late disclosure that she will claim a $13.00 per hour rate.[4]

Defendant also cannot credibly complain of any meaningful surprise or prejudice in response to Plaintiff's belated assertion that she will claim to have missed three days of work. While Plaintiff's deposition testimony on this subject—that she missed a "few days" of work—was admittedly vague, it did not prevent Defendant from gathering information to mount her defense. Indeed, Defendant noted that the evidence supports the proposition that "she returned to work the same day and lost no time from work." (Dkt. No. 105 at 7). Plaintiff's belated specification of "three" rather than a "few days" does not negate the utility of Defendant's defense. Accordingly, there is little meaningful prejudice or surprise that Defendant will suffer if Plaintiff is allowed to testify that she missed three days of work.

At a hearing on March 21, 2016, the Court pressed Defendant as to how—given Plaintiff's untimely disclosure—she would be prejudiced if Plaintiff testified during trial that she missed three days of work and was earning $13.00 per hour. Defendant responded that she is now limited to Plaintiff's testimony and that, had Plaintiff timely disclosed her damage calculations, Defendant could have engaged in third-party discovery to attempt to obtain documentation such as wage scales or absentee slips to verify or disprove Plaintiff's claims. In assessing whether Plaintiff's untimely disclosed evidence should be excluded, the Court finds this argument unpersuasive.

---

[4] During a pretrial hearing, Defendant argued that—notwithstanding the contents of the settlement letter—she was not aware that Plaintiff would ultimately claim a wage of $13.00 per hour. While this may be true, Defendant has failed to articulate how she is prejudiced or surprised by the fact that Plaintiff is now claiming an hourly wage that is consistent with the hourly wage in the settlement letter.

7

First, as noted by Plaintiff's counsel, Plaintiff's employer at the time (Jacobs IMC) ceased operations many years ago; thus, Defendant likely could not have obtained any documentation from that entity. Even assuming that another entity such as HOVENSA would have had documentation pertinent to Plaintiff's lost wages claim, it is not apparent why Defendant could not have engaged in this third-party discovery even in the absence of learning that Plaintiff was specifically claiming that she was earning $13.00 per hour and had missed three days of work. This is especially so given that Defendant was aware that Plaintiff was claiming lost wages; that $13.00 per hour was the wage asserted in the settlement letter submitted by Defendant on Plaintiff's behalf in the underlying litigation; and that Plaintiff was claiming that she had missed a "few days" from work.

In making this determination, the Court finds the Third Circuit's decision in *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) to be instructive. In *ZF Meritor*, the plaintiff's evidence of damages was based entirely upon its expert's report. *Id.* at 299. After it was determined that the damage estimates in the expert report were unreliable, the plaintiff moved to modify the damage estimates to correct the calculations. *Id.* at 297. The district court denied the plaintiff's motion as untimely. *Id.* Applying the *Pennypack* factors, the Third Circuit held that the district court abused its discretion in denying the plaintiff's request to submit alternative damage estimates. *Id.* at 300. In determining that the defendant would not have suffered substantial prejudice, the Third Circuit emphasized that the "new calculations will be based on data from the initial report," and will employ the same methodologies. *Id.* at 298. Thus, the defendant "will not have to analyze any new data, or challenge any new methodologies." *Id.*

Like the request to submit alternative damage estimates in *ZF Meritor*, Plaintiff here is not attempting to pursue a novel theory of lost wages or even introduce different evidence. Rather, Plaintiff's calculation of damages is based on, and consistent with, the $13.00 hourly wage of

8

which Defendant was aware and the "few days" of missed work to which Plaintiff testified. Defendant is not required to analyze different evidence or a novel theory of damages.

In sum, under the first *Pennypack* factor, the Court finds little—if any—prejudice or surprise to Defendant. Rather, long before Plaintiff disclosed that she would seek $312.00 of lost wages based on three missed days and an hourly wage of $13.00, Defendant was aware of the general contours of Plaintiff's claim and was prepared to rebut it. Thus, the first *Pennypack* factor weighs against exclusion of Plaintiff's evidence of lost wages.[5]

In view of the Court's finding that Defendant would suffer little, if any, prejudice or surprise, the Court also concludes that the second and third *Pennypack* factors (the ability of Defendant to cure the prejudice and the degree of disruption of an orderly trial) also do not support exclusion. The Court acknowledges that there may have been little Defendant could have done to cure any significant prejudice or surprise in the four days between when Plaintiff disclosed her damages computation and the start of trial if, in fact, such prejudice or surprise existed. As noted above, however, the Court finds that there was little, if any, actual prejudice or surprise that needed to be cured. Likewise, there is no risk that the trial of this matter would be disrupted by allowing Plaintiff to pursue her claim for lost wages. Allowing Plaintiff to present this evidence at trial poses no risk of disruption or delay, because Plaintiff is prepared to present her testimony and Defendant

---

[5] In reaching this conclusion, the Court finds the decision in *Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) to be distinguishable. In *Ware*, the Third Circuit affirmed the district court's decision to exclude all evidence of the plaintiff's damages pursuant to Rule 37(b)(2)(B) (failure to comply with a discovery order), even though doing so precluded the plaintiff from establishing a necessary element in its breach of contract claim and resulted in the dismissal of the claim. *Id.* at 219. The Third Circuit affirmed the underlying district court's finding that the defendant "had been 'clearly prejudiced by [p]laintiff's counsel's failure to provide specific information and documentation concerning the damages calculation in a timely fashion'" in that the untimely disclosure impeded the defendant's "ability to prepare a full and complete defense." *Id.* at 222-23 (quoting *Ware Communications, Inc. v. Rodale Press, Inc.*, 2002 WL 89604, at *7 (E.D. Pa. Jan. 23, 2002)). Here, however, Defendant has been unable to articulate any compelling reason why Plaintiff's untimely disclosure impeded her ability to mount her defense. Accordingly, *Ware* is inapt.

has already gathered information to mount a defense. Thus, the second and third *Pennypack* factors do not support exclusion.

Turning to the fourth *Pennypack* factor, the Court finds no evidence of willfulness or bad faith. The Court is, of course, troubled by Plaintiff's failure to provide her lost wages computation until four days before trial, and only then in response to the Court Order issued after the pretrial conference. (Dkt. No. 90). Plaintiff offers no explanation for this delay. However, it does not appear—and Defendant does not assert—that Plaintiff's failure to timely disclose the specifics of her lost wages was a bad faith or willful attempt to conceal evidence. To the contrary, given the relatively small amount of lost wages Plaintiff claims ($312.00) and Plaintiff's failure to point to direct supporting evidence of her hourly rate and the number of days she missed (such as paystubs or absentee slips), it is more likely that Plaintiff simply does not have such evidence to support her claim for lost wages. This is not surprising given the fact that the relevant documentation would have been in existence more than 14 years ago. Failing to have documentation, especially where such failure does not appear to be deliberately contrived to benefit the non-disclosing party, does not, by itself, rise to the level of willfulness or bad faith. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 793 (3d. Cir. 1994) (holding that district court's finding of willfulness and bad faith was clearly erroneous in part because the party "had little to gain" from the delayed disclosure). Accordingly, the Court concludes that this fourth *Pennypack* factor also weighs against exclusion.

The Court's resolution of the fifth *Pennypack* factor (the importance of the challenged evidence) is indeterminate. On the one hand, the amount of damages Plaintiff seeks for lost wages is relatively small. Moreover, precluding Plaintiff from recovering lost wages will not significantly impact Plaintiff's ability to proceed to trial on her other claims. *See CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009) (upholding the district court's decision to exclude evidence regarding plaintiff's *quantum meruit* claim, among other theories of damages, in part because the

evidence "[was] not essential to [plaintiff's] underlying recovery" on other damages); *cf. Ware*, 322 F.3d at 221 (noting that excluding evidence "is particularly extreme" when doing so is tantamount to dismissing the party's underlying cause of action).

On the other hand, excluding the contested evidence would obviously be fatal to Plaintiff's ability to recover any damages she may have incurred for lost wages. In examining the importance of challenged evidence, the Court recognizes that "courts favor the resolution of the disputes on their merits." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1007 (D. Del. 2013) (quoting *Abbott Labs. v. Lupin Ltd.*, Civil Action No. 09–152–LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011)) (brackets omitted). Here, excluding the challenged evidence would entirely foreclose Plaintiff's ability to present the merits of her lost wages claim to the jury. In view of the countervailing considerations, the Court concludes that this fifth *Pennypack* factor is neutral—it does not weigh either in favor or against exclusion of the evidence of lost wages.[6]

### III. CONCLUSION

After considering all five *Pennypack* factors, the Court finds that—although Plaintiff's disclosure of her damages computation for her lost wages was untimely—exclusion of all related evidence is not warranted under Rule 37. Accordingly, the Court will not impose the extreme sanction of excluding evidence regarding Plaintiff's lost wages.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 29, 2016

                                                                       _____/s/_____
                                                                       WILMA A. LEWIS
                                                                       Chief Judge

---

[6] Concluding that the fifth *Pennypack* factor is neutral does not prevent the Court from concluding that exclusion of the challenged evidence is unwarranted. *Miller v. Trans Union, LLC.*, No. 3:12-CV-1715, 2015 WL 2089965, at *4 (M.D. Pa. May 6, 2015) (holding that exclusion of challenged evidence was not warranted even though the court "reach[ed] no conclusion" regarding the importance of the challenged evidence).